AO106 (Rev. 12/03) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT

__SOUTHERN__ DISTRICT OF __CALIFORNIA__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

One (1) Black Garmin Nuvi 750 Global Positioning Satellite seized from an Orange Freightliner tractor trailer driven by Ricardo LOPEZ and in the custody of the DEA

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

Case Number: '08 MJ 8399

I, __JEFFREY BUTLER__ being duly sworn depose and say:

I am a(n) __Special Agent with Drug Enforcement Administration__ and have reason to believe
             Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

REFER TO ATTACHMENT A

in the __SOUTHERN__ District of __CALIFORNIA__

there is now concealed a certain person or property, namely (describe the person or property to be seized)

REFER TO ATTACHMENT B

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)

electronic data that constitutes evidence of a criminal offense, and electronic data which is and has been used as the means for committing a ciriminal offense.

concerning a violation of Title __21__ United States code, Section(s) __841(a)(1), 846, 952, 960, 963__

The facts to support a finding of probable cause are as follows:

REFER TO ATTACHED AFFIDAVIT OF DEA SPECIAL AGENT BUTLER.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

Signature of Affiant

Sworn to before me and subscribed in my presence,

5/9/2008                                    at    EL CENTRO         CALIFORNIA
Date                                              City              State

Ruben B. Brooks            U.S. Magistrate Judge
Name of Judge              Title of Judge          Signature of Judge

FILED
MAY 09 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEARCHED

One Black Garmin Nuvi 750 Global Positioning Satellite, that was found at the Highway 86 United States Border Patrol Checkpoint inside of an Orange Freightliner tractor trailer driven by Ricardo LOPEZ on April 24, 2008.

The Garmin Nuvi 750 Global Positioning Satellite to be searched is currently located at the DEA Imperial County District Office, Imperial, California.

## ATTACHMENT B

## ITEMS TO BE SEIZED

Any and all electronically stored information in said Global Positing Satellite, including:

    a. Custom Points of Interest;

    b. Routes;

    c. Destinations;

    d. Detours;

    e. Saved Addresses;

    f. Saved Places You Find;

    g. Saved Favorites;

    h. Saved Points of Interest;

    i. Home location;

AFFIDAVIT

'08 MJ 8399

UNITED STATES OF AMERICA     )
                             )  SS
SOUTHERN DISTRICT OF CALIFORNIA )

I, Jeffrey Butler, being duly sworn, depose, and say:

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics investigation conducted by special agents of the United States Drug Enforcement Administration ("DEA") for the following target location: One black Garmin Nuvi 750 Global Positioning Satellite.

2. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the Garmin Nuvi 750 Global Positioning Satellite to be searched further:

    a. Custom Points of Interest;

    b. Routes;

    c. Destinations;

    d. Detours;

    e. Saved Addresses;

    f. Saved Places You Find;

    g. Saved Favorites;

    h. Saved Points of Interest;

    i. Home location;

which evidences (1) the existence of a conspiracy to import, possess, sell, and distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 846, 952, 960, and 963, (2) contraband, fruits of crime or things otherwise criminally possessed, and (3) property designed or intended for use or which is or has been used as a means of committing criminal offenses.

3. The information contained in this affidavit is based on my experience and training, consultation with other Special Agents of DEA, Supervisory and Patrol Agents of the United States Border Patrol, Special Agents with Immigration and Customs

1

Enforcement ("ICE"), and other federal agents and state law enforcement officers. The evidence and information contained herein was developed from interviews, documents, border crossing records available on the Treasury Enforcement Communication System ("TECS"), vehicle records from the California Department of Motor Vehicles ("DMV"), agency reports, and public records.

# I

## EXPERIENCE AND TRAINING

4.  I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been so employed for approximately three years. I am currently assigned to the Imperial County District Office. Prior to my current position as a Special Agent with the DEA, I was a police officer in the State of Oregon for approximately four years.

5.  I have received training in all aspects of conducting narcotics investigations. I am familiar with narcotics traffickers' methods of operation including the distribution, storage, and transportation of narcotics and the collection of money proceeds of narcotics trafficking and methods of money laundering used to conceal the nature of the proceeds. I am familiar with, and have participated in, all of the normal methods of investigation including, but not limited to, visual surveillance, questioning of witnesses, the use of search and arrest warrants, the use of confidential sources and informants, the use of pen registers, the use of court authorized wire intercepts, and the use of undercover agents.

6.  I have conducted investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as investigations related to money laundering offenses involving the proceeds of specified unlawful activities and conspiracies associated with criminal narcotics, in violation of Title 21, United States Code, §§ 841(a)(1), 843(b), and 846, and Title 18, United States Code, 1956, 1957, and 371. Throughout my career as a Special Agent with DEA, I have conducted and

participated in investigations that have resulted in the seizure of multi-kilogram quantities of methamphetamine, cocaine, and marijuana, as well as the seizure of millions of dollars in narcotics proceeds.

II

**DETAILS OF THE INVESTIGTION**

7.  On April 24, 2008, at approximately 1:30AM, United States Border Patrol Agent ("USBPA") Eulices Recinos was working at the United States Border Patrol Highway 86 Checkpoint. At that time, an orange Freightliner tractor trailer bearing California license UP97303 approached primary inspection. USBPA Recinos contacted the driver, later identified as Ricardo LOPEZ. During this contact, USBPA Recinos received nervous responses from questions asked to LOPEZ. In addition, USBPA Recinos noticed LOPEZ avoided eye-contact with him (USBPA Recinos). USBPA Recinos determined through questioning that LOPEZ had no bill of lading for the cargo contained in his trailer. Due to the suspicious behavior exhibited by LOPEZ, USBPA Recinos asked and received consent to search the tractor trailer driven by LOPEZ. LOPEZ was subsequently referred to secondary inspection.

8.  Upon arrival at secondary inspection, USBPA's Rodolfo Avitia and Jose A. Garcia contacted LOPEZ. USBPA Garcia continued questioning of LOPEZ. During this questioning, LOPEZ admitted to USBPA Garcia that the trailer contained marijuana. A search of the trailer resulted in the seizure of approximately 1,441.3 pounds of marijuana.

9.  DEA SA's Jeffrey Butler and Tracy Huxman responded to the checkpoint for further investigation. SA Butler searched the orange Freightliner and found a black Garmin Nuvi 750 Global Positioning Satellite ("Target GPS") mounted in the cab. SA Butler seized the Target GPS and later placed it into evidence at the DEA Imperial County Office.

10. At approximately 7:08AM, SA's Butler and Huxman contacted Ricardo LOPEZ as he sat in a holding cell. SA Butler asked LOPEZ if he spoke English and

3

LOPEZ replied in English that he did. At that time, SA Huxman, as witnessed by SA Butler, advised LOPEZ of his Miranda warning in English from a DEA-13a. LOPEZ stated, "Yes" when asked if he understood and then nodded his head up and down when he was asked if he was willing to answer questions.

11.     LOPEZ then explained that he met a Hispanic male LOPEZ knew as Benjamin LNU, aka Chapo "a couple of years ago". Approximately two to three weeks ago, Chapo offered LOPEZ money transporting marijuana from Yuma, Arizona to the Los Angeles, California area. LOPEZ agreed to do so and on April 21, 2008, drove his first load of marijuana from Yuma to Ontario, California.

12.     During this first trip, Chapo contacted LOPEZ by phone. During the conversations between LOPEZ and Chapo, Chapo told LOPEZ to drive north a couple of blocks on County 14th Street from Avenue B in Yuma. LOPEZ arrived at the location after dark and found it to be in an open field. After arriving, a white Ford dully truck driven by Chapo and black dully truck driven by an unknown Hispanic male arrived and loaded marijuana into LOPEZ's trailer. Chapo told LOPEZ that he would receive $7,000 as payment for transporting this marijuana. Chapo told LOPEZ to put a seal on the trailer to try and disguise the marijuana as a legitimate load of cargo. From this location, LOPEZ drove to the Love's truck stop on Avenue 3E in Yuma, where he purchased fuel around midnight or 1:00AM.

13.     LOPEZ left the truck stop after he purchased fuel and drove to Interstate 10. LOPEZ was contacted by a Hispanic male known to LOPEZ as Pancho. Pancho gave directions to LOPEZ on the location to deliver the marijuana. LOPEZ followed these directions by taking Interstate 10 west to the Mountain exit south, in Ontario. LOPEZ continued south on Mountain to Mission where he turned west. LOPEZ then turned right at the first street. After LOPEZ continued past the railroad tracks, he stopped and was met by three unknown Hispanic males driving a dark blue or black Ford F-150 crew cab.

14.     On April 23, 2008, around 1:00PM, LOPEZ received a call from Chapo. During this call, Chapo told LOPEZ to drive to Yuma. LOPEZ then drove to Yuma and

spoke to Chapo. Chapo directed LOPEZ to return to the same place. LOPEZ drove and parked at the same location near County 14th Street and Avenue B in Yuma.

15. Upon arriving around 9:00 or 10:00PM, LOPEZ was met by a white truck. Chapo told LOPEZ that that amount of marijuana was doubled from the first trip and that he would be paid $14,000 for this load. LOPEZ then put an extra seal on the trailer.

16. After leaving this location, LOPEZ drove to the Love's truck stop on Avenue 3E in Yuma where he completed his log book. From Love's, LOPEZ drove to Millie's truck stop in El Centro where he slept for a short period of time and then purchased fuel. LOPEZ then drove to the Highway 86 checkpoint where he was stopped.

17. The Target GPS unit seized is currently at the DEA Imperial County District Office in Imperial, California.

### III

### BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANTS

18. I have spoken with numerous individuals who have been involved in the use, sale, manufacture, cultivation, transportation, and illegal distribution of controlled substances and, from doing so, I have learned techniques commonly used by those involved in the distribution, cultivation, manufacturing, packaging, and transportation of controlled substances. I have worked with cooperating sources of information and from them have learned the ways in which narcotic traffickers and clandestine laboratory operators conduct business.

19. Through my training and experience, and in consultation with other agents and informants, I have learned that:

    a. Members of drug trafficking and distribution organizations transport narcotics over long distances, in some cases from originating cities in Southern California to destination cities such as New York and Washington D.C.. During this transportation, members of the drug trafficking and distribution organizations drive on roadways that are unfamiliar to the transporters. Therefore, in order to navigate to

unfamiliar destination cities, drug transporters use devices such as GPS units to assist in the delivery of narcotics.

  b. The Garmin Nuvi 750 Global Positioning Satellite has features that include a plug-in SD-card slot. Members of drug trafficking and distribution organizations often utilize memory storage devices such as memory cards to store photographs and videos of other members of drug trafficking and distribution organizations, drugs, money and assets purchased with drug proceeds.

## IV
## CONCLUSION

  20. Based on my training and experience, consultation with other special agents and law enforcement officers, and all of the facts and opinions set forth in this affidavit, I have probable cause to believe that narcotics offenses, including violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, have been committed and evidence of the crimes will be found in the Target GPS described in Attachment A. I believe that Custom Points of Interest, Routes, Destinations, Detours, Saved Addresses, Saved Places You Find, Saved Favorites, Saved Points of Interest, Home location, and other electronic information in the stored memory of the plug-in SD-card slot including photographs and videos of other members of drug trafficking and distribution organizations, drugs, money and assets purchased with drug proceeds will be found in the Target GPS.

/ /

/ /

/ /

/ /

21. Wherefore, your affiant respectfully requests a warrant be issued authorizing DEA Task Force Officers and Special Agents to examine, analyze, and make record of the contents of the information stored in the seized Garmin Nuvi 750 Global Positioning Satellite described in Attachment A.

This Affidavit is based on reports, documents, and notes furnished to Drug Enforcement Administration Special Agent Jeffrey Butler.

JEFFREY BUTLER
Special Agent
Drug Enforcement Administration

Sworn to and subscribed before me this 9th day of May, 2008

Ruben B. Brooks
United States Magistrate Judge

7